UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **ANTHONY LIA, JOY LIA,**<br><br>    **Plaintiffs,**<br><br>    v.<br><br>**WELLS FARGO BANK, N.A., a/k/a AMERICA'S SERVICING COMPANY, JOHN DOES 1-10 (names being fictitious and unknown), ABC CORPORATION 1-10 (names being fictitious and unknown),**<br><br>    **Defendants.** | Civ. No. 2:14-0752 (WJM)<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

  This is a fraud case. Plaintiffs Anthony Lia and Joy Lia allege, *inter alia*, that Defendant Wells Fargo Bank, N.A., engaged in an unconscionable commercial practice under the New Jersey Consumer Fraud Act ("NJCFA"). Wells Fargo moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiffs oppose the motion, and they also cross-move to file an Amended Complaint. There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, Wells Fargo's motion to dismiss is **DENIED**. Plaintiffs' cross-motion to amend is **DENIED**.

  The Complaint alleges as follows: Plaintiffs live at 9 Browning Court in Mendham, New Jersey (the "Mendham Property"). Compl. ¶ 1; ECF No. 1. Plaintiffs own their Mendham home, and they also own properties in Morristown, New Jersey and Boonton, New Jersey (together with the Mendham Property, the "Properties"). *Id.* Wells Fargo is the servicing agent for mortgages as well as home equity lines of credit that Plaintiffs took out on all of the Properties. *Id.* In early 2008, Plaintiffs "experienced financial hardship" from declines in their construction business and a drop in rental income. *Id.* ¶ 4. In October 2008, Plaintiffs asked for loan modifications from Wells Fargo. *Id.* ¶ 5. Plaintiffs provided Wells Fargo with the documents that Wells Fargo requested. *Id.* ¶ 5. Every two months for a period of three years, "while allegedly in review for a modification," Plaintiffs continued to re-submit their most current financial documents. *Id.* ¶ 6. Plaintiffs allege that Wells Fargo knew or should have known that the loan modification application "would not be fruitful," *Id.* Count 1 ¶ 12, but Wells Fargo nevertheless continued to request that Plaintiffs submit additional documents. The submissions caused Plaintiffs to incur "additional account expenses," but Plaintiffs apparently kept sending in their documents

1

because Wells Fargo said their loans were being evaluated and they would receive an answer shortly.  *Id.* ¶¶ 6, 13.  Wells Fargo continued to post late fees, inspection costs, preservation costs, and other "unnecessary" charges to the account while Plaintiffs' applications were pending.  *Id.* ¶ 15.

On April 28, 2010, roughly one year and six months after Plaintiffs requested loan modification, a Notice of Federal Tax Lien was filed against Plaintiff Anthony Lia.  *Id.* ¶ 8.  Later in 2010, Wells Fargo assigned a designated representative (the "Representative") to Plaintiffs.  *Id.* ¶ 9.  The Representative said that either Wells Fargo had never received Plaintiffs' documents or, alternatively, that Wells Fargo had lost Plaintiffs' documents.  The Representative told Plaintiffs to resubmit their papers.  *Id.* ¶ 9.  On several occasions between 2010 and 2011, the Representative suggested that Plaintiffs file for bankruptcy protection because Plaintiffs could not afford a modified mortgage.  *Id.* ¶ 10.  In 2011, the Representative denied Plaintiffs' mortgage modification application.  *Id.* ¶ 11.  He explained that modification was being denied because of the 2010 tax lien.  *Id.*

On September 16, 2013, Plaintiffs submitted additional documents to Wells Fargo in hopes of receiving a loan modification.  *Id.* ¶ 14.  A Wells Fargo employee told them that their file was "not properly entered into the[] system, no specialist had been assigned, [and] no action had been taken with respect to the application as of November 19, 2013."  *Id.* ¶ 14.  Moreover, all documents were "stale."  *Id.*

On February 18, 2014, Wells Fargo moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim upon which relief can be granted and pursuant to Rule 9(b) for failing to plead with particularity.  On April 7, 2014, Plaintiffs simultaneously opposed the motion and filed a cross-motion to amend the Complaint.

The Complaint contains two counts.  Count I alleges a violation of the New Jersey Consumer Fraud Act.  Count II is a claim for breach of the implied covenant of good faith and fair dealing.  Wells Fargo begins by arguing that both counts should be dismissed because they constitute an impermissible end run around a federal law called Home Affordable Modification Program ("HAMP"), which apparently governs the loan modification sought by Plaintiffs, and which lacks a private right of action.  In support of this argument, Wells Fargo cites an unpublished Third Circuit decision, *Sinclair v. Citi Mortg. Inc.*, No. 12-4261, 2013 WL 1010617 (3d Cir. Mar. 15, 2013).  *Sinclair* is neither binding nor on-point.  *Sinclair* held only that that HAMP lacks a private right of action.  It did not hold that HAMP in any way precludes state law causes of action.  On the other hand, in *Wigod v. Wells Fargo Bank*, 673 F.3d 547, 581-85 (7th Cir. 2012), a published decision that is on-point, the Seventh Circuit explicitly rejected Wells Fargo's "impermissible end run" argument.  The Court finds *Wigod* to be persuasive.

Next, Wells Fargo argues that Count I, the NJCFA count, should be dismissed because Plaintiffs have failed to allege an unconscionable commercial practice and because Plaintiffs have failed to plead an ascertainable loss.  To state a claim under the NJCFA, a plaintiff must allege three elements: (1) "unlawful conduct," (2) "ascertainable loss," and (3) "a causal relationship between the defendants' unlawful conduct and the plaintiff's ascertainable loss."  *International Union of Operating Engineers Local No. 68 Welfare*

2

*Fund v. Merck & Co.*, 192 N.J. 372, 389 (2007). "Unlawful conduct" includes something called an "unconscionable commercial practice." N.J.S.A. 56:8-2. Unconscionability refers to "good faith, honesty in fact and observance of fair dealing." *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 18 (1994) (internal quotation and citation omitted). It should be "interpreted liberally so as to effectuate the public purpose of the [NJCFA]." *Assocs. Home Equity Servs., Inc. v. Troup*, 343 N.J. Super. 254, 543 (App. Div. 2001).

For purposes of Rule 8(a) and 9(b), Plaintiffs have sufficiently pled an unconscionable commercial practice. Plaintiffs allege that Wells Fargo strung them along for months, letting Plaintiffs believe they would be eligible for loan modification when Wells Fargo knew or should have known that they would not be. Plaintiffs also allege Wells Fargo's delay tactics were geared toward preventing Plaintiffs from receiving a loan modification. It is possible that Plaintiff's theory lacks foundation—i.e. it is possible that Wells Fargo had nothing to gain from drawing out the application process, and that Wells Fargo's employees were simply careless or overburdened. It is also possible that Wells Fargo strung out the application process to increase the chances of an event, like the 2010 tax lien, that would allow Wells Fargo to deny Plaintiffs application. Discovery will reveal which theory is correct. Since the truth lies with Wells Fargo, Rule 9(b) does not permit the Court to demand more of the Plaintiffs by way of factual allegations at this stage of the case. *See In re Craftmatic Sec. Litig.*, 890 F.2d 628, 645 (3d Cir. 1989) (relaxing the 9(b) standard where plaintiffs "cannot be expected to have personal knowledge of the details of corporate internal affairs").

Next, the Court finds that Plaintiffs have sufficiently pled an ascertainable loss. Plaintiffs claim that they were forced to incur "costs, fees, and additional arrearages" because Wells Fargo strung out the modification application process. To survive Rule 9(b), Plaintiffs need not plead the exact dollar amount of their loss. *In re Gerber Probiotic Sales Practices Litig.*, No. 12-835, 2013 WL 4517994, at *5 n.4 (D.N.J. Aug. 23, 2013). Instead, plaintiffs must provide enough specificity to give defendants notice of their possible damages. *Torres–Hernandez v. CVT Prepaid Solutions, Inc.*, No. 8-1057, 2008 WL 5381227, at *7 n.3 (D.N.J. Dec.17, 2008). The Court finds that Wells Fargo has sufficient notice of the costs, fees, and arrearages associated with Plaintiff's account and with preparing loan modification materials.[1] Accordingly, the Court will **DENY** the motion to **DISMISS** Count I.

Next, Wells Fargo argues the Count II, the breach of the implied covenant of good faith and fair dealing claim, fails to survive a motion to dismiss. To prevail on Count II, Plaintiffs must establish "proof of bad motive or intention . . . sufficient to support a conclusion that the party alleged to have acted in bad faith has engaged in some conduct that denied the benefit of the bargain originally intended by the parties." *Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 251 (2001). Here, Plaintiffs have identified the

---

[1] Plaintiffs also request damages associated with their decision to forgo alternative modification options while they continued to send application materials to Wells Fargo. Since Count I will proceed, the Court need not address at this stage of the case whether this category of damages is available to Plaintiffs.

relevant contracts: the mortgage and refinance contracts for their three properties. Plaintiffs have alleged that Wells Fargo denied them the benefit of the bargain on those contracts by purposefully stringing out the loan modification process, forcing them to incur costs, and then ultimately denying a modification. Accordingly, the Court will **DENY** the motion to dismiss Count II.

## **CONCLUSION**

For the above stated reasons, Wells Fargo's motion to dismiss is **DENIED**. Plaintiffs' cross-motion to amend is **DENIED** as moot. An appropriate Order follows.

                                         /s/ William J. Martini
                                   **WILLIAM J. MARTINI, U.S.D.J.**

**Date: June 17, 2014**